IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NJIOFOR B. OKOCHA, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | 3-10-CV-1763D |
| | § | |
| HOSPITAL CORPORATION OF | § | |
| AMERICA, INC. ET AL., | § | |
|     DEFENDANTS. | § | |

**PLAINTIFF'S RESPONSE AND BRIEF OPPOSING DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**

Plaintiff, Njiofor B. Okocha respectfully submits this Response and Brief Opposing Defendant's Motion to Dismiss and Compel Arbitration.

## I.   FACTS

Mr. Okocha is a registered nurse who was hired by defendant Columbia Medical Center of Arlington Subsidiary, L.P. (the "hospital") in November 2005. On February 13, 2006, the hospital sent out an email letter stating, among other things, that it was: 1) "abandoning the "at will" employment standard; 2) implementing employee advisory groups and 3) initiating an employment resolution process that included binding arbitration. (Exhibit A-3) (App. pgs.12, 13)   No where in the letter is there any statement that continuing employment after February 13, 2006 constituted acceptance of the binding arbitration.

In May 2006, Mr. Okocha became a member of the hospital's float pool. Both Mr. Okocha and the hospital signed an "Acknowledgment of Float Pool Agreement".  A copy of that agreement is attached as Exhibit B.  Exhibit B specifically states that "All

employees of the hospital are employed for a definite term and employment may be terminated with or without cause at any time, at the will of either the employee or [the hospital]". (App. p.14)

Apparently on March 28, 2007, the hospital created a "revised" Mandatory Arbitration Policy that was originally created in January 2006.[1] (Exhibit A-1) (App. p.4)

The revised policy does not include any statement that continuing employment after March 28, 2007 constitutes acceptance of the binding arbitration. Attached to the revised policy is a Mandatory Binding Arbitration Submission Agreement with signature lines for the employer and employee. (Exhibit A-2) (App. pgs.10, 11)  Mr. Okocha denies that he ever received copies of Exhibits A-1, A-2 or A-3. Mr. Okocha's declaration is attached as Exhibit A. (App. p.2) Fannie Sharp, a registered nurse employed by the hospital from 1997 until 2008, denies ever receiving any information about a mandatory binding arbitration policy in effect during the ten plus years she was there. (Exhibit D) (App. pgs.17, 18)  Mary McGowan, a registered nurse, manager and supervisor employed by the hospital from 2004 until 2008, also denies ever receiving any information about a mandatory binding arbitration policy in effect, or giving any such information to employees she supervised at the hospital. (Exhibit E) (App. pgs.19, 20)

Mr. Okocha was terminated in September of 2009. After filing charges of discrimination with the Equal Employment Opportunity Commission (EEOC), Mr. Okocha filed this lawsuit. On October 14, 2011, the hospital filed an answer and claimed that Mr. Okocha was an at-will employee at all times. (Exhibit C) (App. pgs.15, 16)  On April 8, 2011, the hospital filed the within Motion to Dismiss and Compel Arbitration.

---

[1] The hospital did not attach a copy of the mandatory arbitration policy originally created in January of 2006 to its Motion to Dismiss and Compel Arbitration.

**PLAINTIFF'S  RESPONSE AND BRIEF OPPOSING DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION** - 2 -

For the reasons set forth below, Mr. Okocha asks that this Court deny the hospital's Motion and allow the case to proceed.

## II.     LAW and ARGUMENT

Although doubts are usually resolved in favor of arbitration, the federal policy favoring arbitration does *not* apply when determining whether there is a valid agreement between the parities to arbitrate. *American Heritage Insurance Company v. Lang*, 321 F.3d 533, 537, 538 (5th Cir. 2003) (quoting *Fleetwood Enters Inc. v. Gascamp*, 280 F.3d 1069, 1073, 1074 (5th Cir.2002). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp*, 89 F.3d 252, 257 (5th Cir.1996); *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006).   Mr. Okocha concedes that the dispute in question falls within the scope of the arbitration policy proffered by the hospital; however, the evidence clearly establishes that there is no valid agreement to arbitrate between him and the hospital.

### A.     NO VALID AGREEMENT TO ARBITRATE EXISTS BETWEEN THE PARTIES

#### 1.     No Notice or Acceptance of Change of At-Will Contract

While there may be no requirement under the FAA or Texas law that an arbitration clause be signed, there is a requirement that the clause be written and agreed to by the parties. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 604 (Tex. 2005). A valid arbitration agreement is a matter of state contract law and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *Hill v. GE Power Systems*, 282 F.3d 343, 347 (5th Cir.2002).   It is undisputed in Texas that where an

employer institutes a new dispute resolution program that includes mandatory binding arbitration policy, the at-will employment contract between the parties is altered. As such, a party seeking to change the at-will status of an employment contract must establish: (1) notice of the policy and (2) acceptance of its terms. *In re Halliburton*, 80 S.W.3d 566, 568 (Tex. 2002) (quoting *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227 (Tex.1986). In *Halliburton*, the Court found that the requirements for altering an at-will employment contract were met where the employer sent notice of the arbitration policy to the employee informing him that continuing employment would constitute acceptance of the policy. Additionally, in *Halliburton*, there was no dispute that the employer received the notice of the policy. *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 781 (Tex. 2006) (per curiam) was decided along the same evidence. There the Court found that: (1) the employer provided notice of the arbitration policy; (2) the employee had received the notice of an arbitration policy and (3) the notice specified that continued employment meant acceptance of the arbitration policy.

No such set of facts are present here. Mr. Okocha argues that no mandatory binding arbitration policy was ever in place at the hospital during the time he was employed there. Mr. Okocha specifically denies he ever received any written notice, documentation or counseling concerning the hospital's arbitration policy. (App. p.2) The declarations from nurses Sharp and McGowan support Mr. Okocha's declaration regarding notice of any mandatory binding arbitration policy. (App. pgs 17-20)

Additionally, there is no evidence that the hospital provided notice of the actual policy or notice that continued employment meant acceptance of the arbitration policy. The hospital offers the declaration of its former Human Resources Manager in support of

its position that mandatory binding arbitration policy was given to employees in February 2006. In his declaration, Mr. Adkins states, among other things, that in February 2006: (1) the mandatory binding arbitration policy was instituted and a summary of it was emailed to employees, posted for them to see and included with their paycheck stub; (2) there were information sessions available for employees about the arbitration policy; (3) he directed all employees to refer to the mandatory binding arbitration policy and submission agreement on the hospital's website; and (4) he told the employees that continuing their employment constituted acceptance of the arbitration policy. (App. pgs. 22, 23)

There is a problem with Mr. Adkins declaration. The hospital's mandatory binding arbitration policy and submission agreement identified by Mr. Adkins were revised in 2007 so they could not have been posted or disseminated to any employees in February 2006. (App. p.4)  Since the hospital failed to attach the arbitration policy from 2006 it claims to have distributed to its employees, it cannot be claimed that one was distributed at all; consequently, there was no notice.

The only evidence referencing the arbitration policy in February 2006 then is email the hospital president sent to department heads and supervisors asking them to communicate the information to the staff. (App. pgs. 12, 13) In the letter, the hospital president refers to binding arbitration as the last step of the employment dispute resolution process but does not explain the process at all.  The hospital argues that this letter constitutes a summary of the arbitration policy in 2006 and was therefore sufficient to put Mr. Okocha on notice. Since Mr. Okocha continued working at the hospital after February, he accepted arbitration.  In support of this position, the hospital relies on

*Martinez v. Methodist Healthcare System of San Antonio, LTD., LLP.*, No. SA-10-CV-357XR, 2010 WL 2346717, *n6 (W.D. Tex. June 10, 2010) (citing *In re Dallas Peterbilt, Ltd.*, 196 S.W.3d 161, 162 (Tex. 2006) and *Halliburton, supra*.

*Martinez, Dallas Peterbilt and Halliburton* are all distinguishable from the present case. In *Martinez*, the employee did not dispute that she had received notice of a summary of the mandatory arbitration policy. In *Dallas Peterbilt*, the employee signed an acknowledgment form indicating that he received the summary and understood that by accepting employment his claims were subject to arbitration. In *Halliburton*, the employee did not dispute that he received a summary specifying that continued employment constituted acceptance of the arbitration policy. Here, Mr. Okocha expressly disputes he ever received notice of the letter purporting to summarize the arbitration policy and there is no acknowledgement form signed by him. Further, even if this Court determined that sending the letter alone was sufficient, the letter itself was *deficient* as it did not actually summarize the policy, nor did it state that continued employment constituted acceptance of the policy. The letter merely identifies he policy as binding arbitration. There can be no meeting of the minds over terms of employment that were not included in a letter Mr. Okocha did not receive.

**2.  May 23, 2006 Acknowledgement of Float Pool Policy Agreement**

Even if the Court concludes that the hospital changed Mr. Okocha's at-will employment contract in February 2006 by notifying him of the change (arbitration policy) and that Mr. Okocha accepted the change by remaining employed, there is undisputed evidence that the parties revoked that agreement. According to the February 14, 2006 email regarding the arbitration policy, the hospital notified employees that it

was abandoning the "at will" employment standard and initiating an employment resolution process that included binding arbitration. (App. pgs. 12, 13) On May 26, 2006, however, Mr. Okocha and the hospital signed an acknowledgement of a float pool agreement wherein the hospital specifically states that all its employees are employed at will and their employment status "**can be altered only by a written contract of employment… signed by both parties.**" (App. p. 14) This existence of this agreement also precludes enforcement of any arbitration policy deemed to exist under the revised 2007 mandatory binding arbitration policy or submission agreement since neither document is signed by the parties.

### 3.     The Hospital's Concedes Mr. Okocha was an At- Will Employee.

Finally, the hospital is estopped from arguing that a valid arbitration agreement exists between the parties. In arguing that a mandatory binding arbitration policy exists, the hospital is arguing that at the time of his termination, Mr. Okocha's employment status was not at-will.  The hospital's answer flatly refutes such an argument. In its answer filed on October 14, 2010, the hospital specifically asserts that Mr. Okocha "…was at all times an at-will employee." (App. p. 16)

### III.     CONCLUSION

In pursuing this Motion to Dismiss and Compel Arbitration, the hospital is asking this Court to honor either the February 14, 2006 letter (where it abandons the at-will employment standard and institutes arbitration) or the unsigned 2007 revised mandatory binding arbitration policy/agreement;  but,  **ignore** both the May 26, 2006 agreement (where it is undisputed that the parties agree Mr. Okocha's employment status is at-will and cannot be changed without a contract signed by both parties) and its October 14,

2011 answer (where it admits that Mr. Okocha's employment is at-will). The hospital cannot have it both ways.

Based on the above, Mr. Okocha asks that the hospital's Motion to Dismiss and Compel Arbitration be denied.

Respectfully submitted,

**MENES LAW FIRM**

By: */s/ N. Jude Menes*_____
    N. Jude Menes
    State Bar No. 24004815
    Lurlia A. Oglesby
    One Empire Building, Suite 330
    1140 Empire Central Drive
    Dallas, Texas 75247
    Phone: (214) 631-2751
    Fax: (214) 631-2753
    **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that on this 4th day of May, 2011, I served a true and correct copy of this document to the following via the Court's CM/ECF System:

Nancy Patterson and
A. John Harper
Morgan, Lewis & Bockius LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002

Erin O'Driscoll
Morgan, Lewis & Bockius LLP
1717 Main Street, Suite 3200
Dallas, Texas 75201

*/s/ Lurlia A. Oglesby*_____
Lurlia A. Oglesby