IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NJIOFOR B. OKOCHA, § | |
| § | |
| Plaintiff, § | |
| § Civil Action No. 3:10-CV-1763-D | |
| VS. § | |
| § | |
| HOSPITAL CORPORATION OF § | |
| AMERICA, INC., et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

Defendants move under § 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, to dismiss this lawsuit and to compel arbitration. Concluding that defendants failed to prove that plaintiff agreed to the relevant arbitration policy, the court denies the motion.

I

Plaintiff Njiofor B. Okocha ("Okocha") sues defendants Columbia Medical Center of Arlington Subsidiary, L.P. ("CMC") and Columbia North Texas Subsidiary GP LLC ("CNT"),[1] alleging employment discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Tex. Labor Code Ann. § 21.001 *et seq.* (West 2006). Okocha was formerly employed as a registered nurse at CMC from

---

[1]Okocha asserts that CMC and CNT are "partners in the local management and operation of" the Medical Center of Arlington ("MCA"), the healthcare facility at which he worked. Compl. ¶ 2.2. Defendants assert in their answer that MCA and CMC are the same entity. They contend that CMC, not CNT, was Okocha's former employer. Okocha also originally sued Hospital Corporation of America, Inc. and Hospital Corporation of America Management Services, L.P., but he has since dismissed his actions against them.

November 2005 until September 2009. Defendants move under § 4 of the FAA to dismiss this lawsuit and to compel arbitration.

The parties dispute whether Okocha had notice of CMC's Mandatory Binding Arbitration Policy ("Arbitration Policy"), instituted in February 2006, and whether he agreed to the Arbitration Policy by choosing to continue his employment according to the Mandatory Binding Arbitration Submission Agreement ("Arbitration Agreement").[2] Defendants maintain that CMC informed all of its employees, including Okocha, about the Arbitration Policy in several ways: (1) the CEO of CMC emailed all the employees on February 14, 2006 that CMC adopted "an Employment Dispute Resolution Process (including binding arbitration)," and he attached a summary of the "refinements in HR practices" and the full Arbitration Policy,[3] Ds. App. Ex. A-3, at p. 2; (2) in an email from Donna Coleman ("Coleman") (CMC's Director of Human Resources), directors, managers, and supervisors were instructed to post that summary in their work areas, and, according to the testimony of Kevin Adkins ("Adkins") (CMC's Manager of Human Resources), this directive was for the most part complied with; (3) in February 2006, a letter summarizing the

---

[2]The full versions of these policies explicitly state that the binding arbitration procedure is mandatory for all disputes covered under the scope of the Arbitration Policy. The Arbitration Agreement also states that acceptance of the Arbitration Policy is a "material condition of the employment and continuation of employment of the employee" as of the date the Arbitration Policy becomes effective. Ds. App. Ex. A-2, p. 1.

[3]As the court notes *infra* at § IV(A), it is unclear whether Adkins suggested in his testimony that the full version of the Arbitration Policy was attached to the email or was provided at another time.

Arbitration Policy and the full version of the Arbitration Policy were hand-delivered to all employees with their paychecks; (4) the Arbitration Policy was presented and discussed at voluntary employee information sessions; and (5) employees were specifically directed that more details could be found in the full Arbitration Policy and the Arbitration Agreement on the hospital Intranet, Compliance 360, and that their continued employment with the hospital constituted acceptance of the Arbitration Policy. Okocha denies having any actual notice of the Arbitration Policy. Because of the material evidentiary disputes presented by the parties' briefing and written submissions, the court convened a hearing to consider live testimony. Defendants presented Adkins' testimony. Okocha and two former employees, Mary McGowan ("McGowan") and Fannie Sharp ("Sharp"), testified in opposition to defendants' motion.

II

Section 2 of the FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* The statute "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3 and 4).

When adjudicating a motion to compel arbitration, this court engages in a two-step process. First, the court must determine "whether the parties agreed to arbitrate the dispute"

by "apply[ing] the contract law of the particular state that governs the agreement." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263-64 (5th Cir. 2004); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 & n.2 (5th Cir. 2003) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam)).  If the first step is answered in the affirmative, the court then decides "'whether legal constraints external to the parties' agreement foreclosed the arbitration' of the dispute." *Hadnot*, 344 F.3d at 476 (footnote omitted) (quoting *Mitsubishi Motors*, 473 U.S. at 628); *see also, e.g., Wash. Mut.*, 364 F.3d at 263. The party seeking arbitration has the burden of establishing the existence of an agreement to arbitrate. *See, e.g., In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 877 (Tex. App. 2005, no pet.).

### III

It is undisputed in this case that, if the Arbitration Policy governs, Okocha's discrimination and retaliation claims fall within its scope. The parties also agree that no external legal constraints exist to foreclose arbitration. The sole question presented is "whether there is a valid agreement to arbitrate between the parties." *Am. Heritage*, 321 F.3d

at 537.[4]

Defendants assert that they implemented the Arbitration Policy on February 2006, during Okocha's employment. If a party seeks to modify a preexisting agreement to contain an agreement to arbitrate, it can do so, but the modification must satisfy the elements of a contract under Texas law: "a meeting of the minds supported by consideration."[5] *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986). "[A] party asserting a change to an at-will employment contract must prove two things: (1) notice of the change, and (2) acceptance of the change." *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002) (citing *Hathaway*, 711 S.W.2d at 229). In order to establish notice, an employer "must prove that he unequivocally notified the employee of definite changes in employment terms." *Hathaway*, 711 S.W.2d at 229 (citing *Stowers v. Harper*, 376 S.W.2d 34, 39 (Tex. Civ. App. 1964, writ ref'd n.r.e.)). This requires that the employee have knowledge of the modification, and thus "know the nature of the changes and the certainty of their imposition." *Id.* (citing *Stowers*,

---

[4]As evidence against the existence of a mandatory binding arbitration agreement, Okocha relies on his "at will" employment relationship. This contention is misplaced because even an at-will employment relationship can be governed by a mandatory binding arbitration agreement. *See, e.g., In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002) (holding that new dispute resolution program was not illusory despite at-will relationship because it was *accepted* by continued employment, not *dependent* on continued employment); *In re Dall. Peterbilt, Ltd.*, 196 S.W.3d 161, 162 (Tex. 2006) (per curiam) ("An employer may enforce an arbitration agreement entered into during an at-will employment relationship[.]").

[5]The parties do not dispute the consideration element because, as provided by Okocha, mutual promises to arbitrate employment disputes is sufficient consideration. *See In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010) (per curiam) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003)).

376 S.W.2d at 39). Additionally, the employer must prove that the employee accepted the proposed changes. *Id.* Continued employment constitutes acceptance if the employer unequivocally notified the employee of the modification. *Id.* In this case, defendants' motion turns on whether they proved that they unequivocally notified Okocha of the Arbitration Policy.

IV

Defendants failed to prove at the evidentiary hearing that they unequivocally notified Okocha of the Arbitration Policy through any of the five methods of communication on which they relied.

A

1

Adkins testified that the CEO sent an email to all employees using the Meditech email system, and that all clinical employees, including Okocha, had a Meditech email address. Defendants submitted this email to the court. Although the contents are from the CEO, the email appears to have been sent by another individual and is addressed to "DL Everyone." Ds. App. Ex. A-3 at 1. It states that CMC adopted "an Employment Dispute Resolution Process (including binding arbitration)" and that a summary outlining "some important refinements in HR practices" was attached. *Id.* at Ex. A-3 at 2. Defendants did not introduce in evidence the summary allegedly attached to the email. In response to a question from Okocha's counsel regarding the documents attached to the CEO's email, Adkins testified that a summary was attached, and he also stated that the full version of the policy was provided.

But it is unclear from Adkins' testimony whether he was testifying that the full Arbitration Policy was attached to the email or was provided at another time. Adkins also appeared to be uncertain on this question, testifying at a later point that he was not certain of the wording attached to the email.

By contrast, Okocha testified that, although he had a Meditech email address and checked it daily, he never received the email. McGowan and Sharp also testified that they never received the email.[6]

The hearing evidence conflicts on the question whether defendants notified Okocha through his receipt of the email from the CEO of CMC. The court is unable to find that defendants unequivocally provided Okocha notice via this method.[7] Defendants rely on

---

[6]Sharp also used a Meditech email address, and McGowan used a Microsoft Works email address.

[7]Letters that are properly addressed, stamped, and mailed are presumed to be received by the addressee. *See, e.g., Tex. Emp'rs Ins. Ass'n v. Wermske*, 349 S.W.2d 90, 92 (Tex. 1961); *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir. 1983) (citing *Southland Life Ins. Co. v. Greenwade*, 159 S.W.2d 854, 857 (Tex. 1942)). But it is unclear whether this presumption applies to emails. So far as this court is aware, no Texas court has decided this question, and defendants do not argue that Texas law presumes receipt of emails. Other courts though have recognized this presumption. *See, e.g., Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 476-77 (7th Cir. 2009); *Am. Boat Co. v. Unknown Sunken Barge*, 418 F.3d 910, 914 (8th Cir. 2005). Even if the court assumes that there is a presumption of receipt and that it applies to the email in question, the presumption is rebutted in this case by persuasive evidence that Okocha did not receive the email. *See, e.g., Texaco, Inc. v. Phan*, 137 S.W.3d 763, 767 (Tex. App. 2004, no pet.) ("The mere denial of receipt is sufficient to rebut the presumption."); *Delgado v. Hernandez*, 951 S.W.2d 97, 99 (Tex. App. 1997, no pet.) ("When appellant filed an affidavit stating that he did not receive the notice, the presumption was rebutted." (citing *Thomas v. Ray*, 889 S.W.2d 237, 238 (Tex. 1994); *Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex. 1987))). If rebutted, the presumption no longer has force, but the facts underlying the presumption remain to be considered. *E.g., Hernandez,*

Adkins' testimony, but his testimony is vague concerning the specific recipients of, and the attachments to, the email. Although the email itself is addressed to the group "DL Everyone," defendants failed to introduce evidence showing that Okocha's email address was included in this group or to provide other evidence that showed unequivocally that they sent Okocha this email. *See Tucker v. Conn Appliances, Inc.*, 2010 WL 2710693, at *4 (S.D. Tex. July 6, 2010) (concluding under Texas law that employee did not receive unequivocal notification of arbitration policy because none of employer's evidence was specific to employee and employer's witness averred generally that "all employees" received relevant materials); *cf. Burns v. Air Liquide Am., L.P.*, 2006 WL 305644, at *2 (S.D. Tex. Feb. 8, 2006) (holding under Texas law that plaintiff received an attached copy of arbitration policy because plaintiff electronically acknowledged receipt of letter without complaining that policy was not attached). Moreover, Okocha adduced testimony that at least two employees using a Meditech email address did not receive this email.[8]

---

951 S.W.2d at 99 (citing *Huggins*, 724 S.W.2d at 780); *Cooper v. Hall*, 489 S.W.2d 409, 415 (Tex. Civ. App. 1972, writ ref'd n.r.e.). The same evidence that rebuts the presumption persuades the court that defendants have not met their burden of showing that defendants unequivocally provided Okocha notice through this email.

[8]The court recognizes that courts have presumed that materials explaining an arbitration policy were successfully mailed to a plaintiff despite the assertion that the plaintiff did not receive the materials, or that the defendants failed to prove that the plaintiff personally received the documents. *See, e.g., In re Halliburton Co.*, 2009 WL 1886659, at *4 (Tex. App. July 2, 2009, no pet.) (mem. op.) (plaintiff disputed receiving documents); *Granite Constr. Co. v. Beaty*, 130 S.W.3d 362, 366 (Tex. App. 2004, no pet.) (plaintiff asserted that defendant did not prove that plaintiff personally received mailing). But these cases are distinguishable because the plaintiffs merely asserted lack of receipt without presenting supporting evidence. Here, Okocha introduced evidence at the hearing

2

Even assuming that Okocha unequivocally received *the email*, the court finds that defendants failed to demonstrate that the email or its attachments provided Okocha unequivocal notification of *the Arbitration Policy*.

Courts have concluded that documents that summarize an arbitration policy can provide adequate notice and are therefore capable of binding an employee who continues employment when the summary explains the policy's key points and provides that the employee's continuation of employment constitutes acceptance. *See, e.g., In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006) (concluding that form unequivocally notified employee because it "briefly explained [employer's] arbitration policy, stated an effective date . . ., and conspicuously warned that employees were deemed to accept the policy by continuing their employment"); *In re Halliburton*, 80 S.W.3d at 568 (holding that summary adequately notified employee because it "explained the Program, stated its effective date, and explained that by working after that date an employee would indicate that he or she accepted the provision"); *HSS Sys., L.L.C. v. Lucan*, 2011 WL 2297716, at *4 (Tex. App. June 9, 2011, no pet.) (mem. op.) ("A summary of an arbitration policy may convey adequate notice of the policy to an employee when the policy's material elements are included in the summary."). The email that defendants allegedly sent to Okocha stated the following about CMC's new arbitration-related reforms:

---

supporting his claim that he did not receive the email.

> [W]e're implementing Employee Advisory Groups, or EAGs. This means giving you more influence over workplace issues and more opportunity to express yourself and shape our culture. And, we're initiating an Employment Dispute Resolution Process (including binding arbitration) to guarantee fairness and consistency in the way we deal with employee performance issues and for-cause employment terminations.

Ds. App. Ex. A-3 at 2. This email is inadequate because it does not mention whether binding arbitration is mandatory; it merely provides that arbitration is "includ[ed]" in the "Employment Dispute Resolution Process." The email does not notify an employee that his decision to continue employment will constitute legal acceptance of a mandatory arbitration process. Although the email refers to an "enclosed summary," defendants failed to introduce the summary in evidence, and Adkins testified that he was uncertain about the content of the attachments to the email. Without evidence that establishes the contents of the email summary, the court cannot determine whether it adequately alerted Okocha that the Arbitration Policy was mandatory and that his continued employment would constitute legal acceptance. And although Adkins may have suggested in his testimony that the full version of the Arbitration Policy was attached to the email, the court does not credit this testimony. Adkins seemed uncertain about which documents were attached to the email, and the email itself and defendants' briefing only refer to an enclosed summary.

Accordingly, the court holds that defendants failed to show that the email unequivocally notified Okocha of the Arbitration Policy.

B

Adkins also testified that the summary attached to the CEO's email was posted in the employees' work areas. Defendants submitted Coleman's email to "MCOA.DL Dept Directors" and "MCOA.DL Mgrs/Supers," which forwarded the CEO's email. This email stated: "Please assist with making sure employees are aware of the changes by posting this in your areas as well as communicating the sessions to your staff." Ds. App. Ex. A-3 at 1. Adkins testified that, while he was unable to say whether he saw all the postings, this was executed for the most part.

Okocha, McGowan, and Sharp testified that they never saw such a posting. And McGowan, who served as Okocha's supervisor during the relevant time and would therefore have been responsible for posting the summary in Okocha's unit, testified that she did not post the summary because Coleman did not send her the email instructing her to do so. The email was addressed to "MCOA.DL Dept Directors" and "MCOA.DL Mgrs/Supers," and, according to McGowan, this communication did not reach her. This may have occurred because she used a Microsoft Works email address.

The court finds that defendants did not meet their burden of showing that Okocha unequivocally received notification of the Arbitration Policy from these postings. Although Coleman may have requested that managers, directors, and supervisors post the summary in their work areas, defendants failed to introduce evidence that permits the finding that this request was implemented in an area where Okocha would have seen it. Coleman's request that recipients "Please assist" communicated a request, not a directive. Adkins' testimony

- 11 -

is not persuasive on this question because he was only able to state that he believed Coleman's request was for the most part executed. But he did not check whether it was posted in each work area, including Okocha's. And Okocha offered evidence that the summary was not posted in his work area. McGowan, his supervisor, testified that she was unaware of this email.

C

Adkins testified that he provided the "payroll person" letters summarizing the Arbitration Policy to be distributed with paychecks, and that employees received the summary and a full version of the policy with their paychecks in February 2006. Okocha testified that he never received any policies or other documents with his paycheck. McGowan and Sharp likewise testified that they never received anything like the Arbitration Policy with their paychecks.

The court finds that defendants did not satisfy their burden of proving that Okocha unequivocally received notification of the Arbitration Policy through the summary and full policy allegedly included with his paycheck. Defendants did not adduce persuasive evidence that Okocha specifically received these documents attached to his paycheck, and Okocha testified that he did not. *See, e.g., Jones v. Fujitsu Network Commc'ns, Inc.*, 81 F.Supp.2d 688, 692 (N.D. Tex. 1999) (Kendall, J.) (noting that, in addition to other methods of communication, defendant distributed to all employees, including the plaintiff specifically, information packet with arbitration agreement); *cf., e.g., In re Halliburton*, 80 S.W.3d at 568 (in concluding that defendant unequivocally notified plaintiff of new dispute resolution

- 12 -

program, noting that plaintiff did not contest receiving notice explaining the program).

D

Adkins testified that CMC conducted voluntary employee information sessions, where it presented and explained the Arbitration Policy, including that mandatory binding arbitration was the final step in the employee dispute resolution process. Employees were invited to these information sessions through the CEO's email, which stated: "For more information please plan on attending one of the following 15 - 20 minute review sessions." Ds. App. Ex. A-3 at 2. Employees may have also learned of the information sessions from their director, manager, and supervisor, because Coleman asked them in her email to communicate the sessions to their staff. But Okocha, McGowan, and Sharp testified credibly that they never saw a posting advertising the information sessions or attended an information session.

The court finds that defendants failed to meet their burden of showing that they unequivocally notified Okocha of the Arbitration Policy through the voluntary employee information sessions. Defendants introduced no evidence that Okocha attended an information session. *See, e.g., Jones*, 81 F.Supp.2d at 692 (noting, in addition to other methods of communication, that defendant held training classes, which plaintiff attended, to explain arbitration policy); *In re Dillard*, 198 S.W.3d at 781 (holding that plaintiff received unequivocal notification because, among other methods of communication, payroll records indicated that plaintiff clocked in before mandatory meeting discussing new arbitration policy and plaintiff admits that she was presented with document regarding policy at

- 13 -

meeting). And the court is not persuaded, based on the mere holding of non-mandatory information sessions and an invitation to employees to attend "for more information" that Okocha personally attended a session. *See, e.g., Tucker*, 2010 WL 2710693, at *4 (concluding that employer failed to show employee unequivocally received information regarding new dispute resolution plan at voluntary information session because it did not show employee attended a session, received materials explaining plan, or spoke with employer about the plan). Moreover, Okocha introduced the testimony of three employees of CMC, including Okocha, that they did not hear about or attend an information session.

E

Adkins stated in a pre-hearing affidavit that the Arbitration Policy and the Arbitration Agreement were posted on the company Intranet, known as "Compliance 360." He averred generally that he "directed employees" to refer to the posting, and that he "told employees" to refer questions to human resources and the consequences of accepting continued employment. Ds. App. Ex. A at 2. Okocha testified that he never heard of, and did not have access to, Compliance 360, and instead referred to floor booklets for company policies. McGowan testified that, although she tried to use Compliance 360, it was not usable due to working malfunctions, and so she, too, used the floor booklets. Sharp testified that she did not have access to Compliance 360. All three disputed ever learning about the Arbitration Policy from Adkins or anyone else.

Defendants did not meet their burden of demonstrating unequivocal notice based on Compliance 360 postings and Adkins' communications to employees. Adkins did not testify

- 14 -

that he communicated the necessary notice to Okocha specifically; he testified that he directed or told "employees." *See Tucker*, 2010 WL 2710693, at *4 (finding that defendants failed to "offer a shred of evidence specific to [plaintiff]" because they only asserted that "all employees" received materials). Okocha denied receiving notice of the Arbitration Policy and introduced the testimony of McGowan and Sharp that they also lacked knowledge of the policy. McGowan also testified that, during the time when her employment was being terminated, she went to human resources to request help, but no one told her about the policy.

If Okocha was not informed of the Compliance 360 posting, the fact that the Arbitration Policy and the Arbitration Agreement were posted on it would not, of itself, provide him the unequivocal notification necessary to deem his decision to continue employment an act of acceptance of the Arbitration Policy. *See HSS Sys.*, 2011 WL 2297716, at *4 ("[Employer] does not cite to, nor could we find, any authority suggesting that the mere presence of a policy on the company Intranet, without any further notification to the employee, amounted to notice of the policy."). All cases of which this court is aware that involve Intranet postings of policy changes have found unequivocal notification only when there are other indications of direct notice to the individual (usually a mailing or distribution directly to the plaintiff) that supplemented the Intranet posting. *See, e.g.*, *Robertson v. U-Haul Co.*, 2011 WL 444773, at *1, *4 (N.D. Tex. Feb. 7, 2011) (Fitzwater, C.J.) (acknowledging that copy of arbitration policy was posted on Intranet, but basing decision to grant motion to compel arbitration on fact that plaintiff personally received copy of policy); *Wilcox v. Valero Ref. Co.*, 256 F.Supp.2d 687, 689 (S.D. Tex. 2003) (noting that

entire dispute resolution plan was available on Intranet, but also discussing that human resources manager met and discussed plan with plaintiff, and employer sent plan to each employee at home address); *Jones*, 81 F.Supp.2d at 692 (noting that employer distributed to every employee, including plaintiff, information packet containing arbitration agreement, and held training classes that plaintiff attended, before noting that employer also posted the agreement on Intranet). Moreover, Okocha introduced evidence that Compliance 360 was not usable or at least was not used by some employees, including Okocha.

V

Because defendants failed to demonstrate that they unequivocally notified Okocha of the Arbitration Policy, they failed to prove that the policy is a legally cognizable agreement between CMC and Okocha under Texas law, and Okocha cannot be compelled to arbitrate his discrimination and retaliation claims.

\* \* \*

Accordingly, for the reasons explained, the court denies defendants' motion to dismiss and compel arbitration.

**SO ORDERED**.

October 18, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE